PIERRE A. BERTHOLD AND OTHERS, PLAINTIFFS IN ERROR, *v.* JAMES MCDONALD AND MARY MCREE.

Where the decision of the Supreme Court of a State was against the validity of a title to land derived from a confirmation by the board of commissioners sitting under the act of March 3, 1807, this court has jurisdiction, under the 25th section of the judiciary act, to review that decision.

Where the controversy was between two claimants to land, both of whom held equitable titles only under confirmation by the board of commissioners above mentioned, the court had a right to go behind the *prima facie* title resulting from the confirmation, and to instruct the jury as to such facts as would tend to establish the superior equity of one of the claimants.

THIS case was brought up from the Supreme Court of the State of Missouri by a writ of error issued under the 25th section of the judiciary act.

It was an action of ejectment brought by Berthold and others against the defendants in error, to recover the possession of a tract of land near St. Louis, containing eighty arpens, equivalent to sixty-eight acres. The action was originally brought in the St. Louis land court. Under the Spanish Government, there was a common field near to the town of St. Louis, called the common field of the Prairie des Noyers. In this common field were two lots, owned respectively by two negresses, one of whom was named Florence Flore, and the other named Jeannette, or Jeannette Flore. Berthold and the other plaintiffs in error claimed under Florence Flore, and McDonald and Mary McRee under Jeannette. Both claims were confirmed in the manner stated in the opinion of the

court. The court before which the case was originally tried left it to the jury to find which of these negresses was the original confirmee of the land in question, and the Supreme Court of Missouri affirmed the correctness of this instruction. The verdict and judgment were for the defendants, and the plaintiffs below brought the case to this court by a writ of error issued under the 25th section of the judiciary act.

The Supreme Court of Missouri was of opinion that the finding of the facts embodied in the instructions given by the court clearly establishes the superiority of the equity of the defendants, and that the plaintiffs seemed to rely solely on the dry technical point, that their confirmation was prior in point of time to that of the defendants—a view of the case in which that court did not acquiesce.

The case was submitted in this court on a printed argument by *Mr. Washburne* for the plaintiffs in error, and argued by *Mr. Blair* and *Mr. Gamble* for the defendants.

The points made by the respective counsel were as follows, viz: by *Mr. Washburne* for plaintiffs in error: .

*First Point.* The confirmation to Charles Gratiot on the 19th. day of November, 1811, was final and conclusive, so that neither the United States nor any person deriving title from the United States subsequently to that date could rightfully claim the land against such confirmation.

Act of Congress, March 3, 1807, sec. 41; 12 Stor. St., 1060.

Strother *v.* Lucas, 12 Pet., 458.

Chouteau *v.* Eckhart, 2 How., 344.

Le Bois *v.* Bramell, 4 How., 449.

Landes *v.* Brant, 10 How., 370.

*Second Point.* The claim and confirmation in the name of Jeannette, who was dead at the time, are nullities, and cannot, even if otherwise valid, stand in the way of the confirmation to Gratiot. The court below disposed of this point by a simple reference to a prior decision of the same court, in Mercier *v.* Letcher, 22 Mo. Rep., 66. The case referred to will be

found to be this: Charles Mercier was proprietor of a tract of land, under an imperfect Spanish title. Mercier died in Spanish times, and Courtois married his widow.

Courtois claimed the land in his own name, as representative of Mercier, and filed with the commissioners the evidences of Mercier's title. The commissioners confirmed the land "to Charles Mercier." The court decided that Courtois, who made the claim, took nothing by this confirmation; and that the heirs of Mercier, who made no claim, and who, by the force of the act of Congress, were barred of all right in the land two years before the confirmation, took title from it. Both branches of this decision seem to be very questionable.

*Third Point.* There are no equities appearing in the case that can defeat a recovery by the plaintiffs in the present action, or deprive them of the right to hold the land under the confirmation to their ancestor.

*Mr. Gamble* said that the following positions were sustained by the evidence and law of the case:

1. The objection to the confirmation in the name of Jeannette, on the ground that she was dead when the claim was filed, is not sustained by the evidence, and if it had been, is not a valid objection in law.

     Mercier *v.* Letcher, 22 Mo. R., 66.

2. In this case, the dispute is between parties holding equitable titles, with the legal title outstanding in the United States, and is to be determined in favor of the party having the superior equity.

     Bagnell *v.* Broderick, 13 Pet. R., 449.

     Wilcox *v.* Jackson, ib., 516.

3. The facts in evidence show that if the two confirmations cover the same land, the superior equity is in the defendants.

4. The reliance of the plaintiffs upon the fact that their confirmation is one day older than that of the defendants, is not warranted by any decision of this court, or by any principle of law, and arises from a mere misapprehension of the language found in the opinion in Landes *v.* Brant, 10 How., 372. No such case as the present ever has been before this court.

Strother *v.* Lucas, 6 Pet. R., 763.
Strother *v.* Lucas, 12 Pet. R., 410.
Chouteau *v.* Eckhart, 2 Howard, 345.
Le Bois *v.* Bramell, 4 Howard, 449.
Bissell *v.* Penrose, 8 Howard, 330.

None of these decisions apply to this case, where there are two confirmations by the same board on consecutive days.

5. If the two confirmations are equal as recognitions of the two original titles, then they are to be laid out of consideration, and the parties are to litigate upon their original titles.

Carmichael *v.* Buster, 8 Martin R., 727.
Sanchez *v.* Gonzales, 11 Martin R., 212.

In such litigation, the defendants must succeed.

6. The doctrine of relation, as explained and applied in Landes *v.* Brant, refers each of the confirmations to the time of filing the notice, and in this case the notice in the name of Jeannette was filed first, and the confirmation in her name becomes the elder by relation.

7. The confirmation for Gratiot, if it in fact covers the land confirmed in the name of Jeannette, is void for want of jurisdiction in the commissioners, because the land was claimed and possessed by Jeannette, under the Spanish Government.

2 Stat. United States, 440, sec. 2.

Certainly it was void as against her and her representatives claiming the land according to law.

8. The confirmation, when properly located, does not cover the land in controversy.

Until surveyed, it attaches to no land.

West *v.* Cochran, 17 Howard, 416.

It was ordered to be surveyed according to the possession of his grantor.

If so surveyed, it would not touch the land in dispute.

It never has been surveyed with reference to that possession.

The survey given in evidence by the plaintiffs is in open disregard of the order of the commissioners, and is a mere nullity.

If a proper survey were made, it would cover the land of Flore, which the heirs of Gratiot have already obtained.

Mr. Justice CATRON delivered the opinion of the court.

The board of commissioners, sitting at St. Louis to examine claims to lands, according to the act of March 3d, 1807, confirmed to Charles Gratiot, assignee of Jeannette Flore, two arpens in front, by forty back, lying in the Prairie des Noyers, near to St. Louis. This common field lot had been designated by survey, and was well known. The confirmation was made November 19th, 1811.

On the next day, (November 20th, 1811,) the board also confirmed the same land to Jeannette, a free negro woman. Patent certificates issued to Gratiot and Jeannette, respectively, dated the same day, 20th November, 1811. Jeannette died about 1803, leaving as her heir a child named Susan Jeannette, who died about 1840.

Gratiot got a deed for the land from a different person, named Florence Flore, who conveyed in the name of *Jeannette Flore.* This deed was made in 1805, and filed by Gratiot with the recorder, and on which deed his confirmation by the board was founded. Jeannette had occupied the land for many years before her death. Florence Flore had never occupied it; had no claim to it, at any time; and conveyed in ignorance of what land her deed covered, in all probability. Gratiot died in 1817, leaving a widow and children. Neither he nor his heirs pretended to have any claim to the premises until recently, before this suit was brought by the heirs.

McDonald and Mary McRee, the defendants, claim under Jeannette, who got the second confirmation. This suit was instituted in the land court at St. Louis by petition, in 1854, under the new code of procedure of Missouri, which confounds all distinction between law and equity, and combines both remedies in the same action. The petition was answered, and a trial had on the merits, before the court and a jury.

The court, on motion of the defendants, instructed the jury as follows:

"If the jury find, from the evidence, that the tract of land confirmed to Jeannette by the board of commissioners includes the land in controversy, and is the same land which was surveyed for Jeannette by the authority of the Spanish Govern-

ment; that said Jeannette, and those acting for or under her, were the only persons who inhabited, cultivated, or possessed, the said tract, prior to the 20th of December, 1803; that the person who executed the deed in the name of Jeannette Flore, and filed by Charles Gratiot with the recorder of land titles as one of the evidences of his claim, is *not the person* for whom the survey of said tract of land was so made, but another and a different person, and that she cultivated and possessed, prior to the 20th of December, 1803, another and different tract in the same common field, surveyed for her, by authority of the Spanish Government, in the year 1788, embracing no part of the land in controversy, the jury ought to find for the defendants."

This instruction was excepted to, and a verdict was found for the defendants.

The cause was brought to the Supreme Court of Missouri by writ of error, where the judgment of the land court was affirmed; and, to revise this judgment, a writ of error was prosecuted out of this court, under the 25th section of the judiciary act.

As the *title* of Gratiot's heirs was directly drawn in question by the foregoing instruction, and as the decision below, giving the instruction, rejected the title, no doubt can exist in regard to the authority of this court to re-examine the decision of the State courts.

It was so determined, in the case of Lytle et al. against the State of Arkansas and others, decided here at this term.

The titles in controversy are equities only, no patent having issued to either claimant on the certificates granted by the board. (10 How., 374.) With these equities, the courts of Missouri were dealing on parol evidence, reaching behind the confirmation; and the question is, had they the power to do so?

The rule laid down by this court in the case of Garland v. Wynn (20 How., 8) is, "that where several parties set up conflicting claims to property, with which a special tribunal may deal, as between one party and the Government, regardless of the rights of others, the latter may come into the ordinary

courts of justice, and litigate the conflicting claims." The board of commissioners was a special tribunal, within the rule.

The principle was applied in the case of Lytle and others against the State of Arkansas and others, cited above.

In these cases, and in several others, the contest was between claimants under occupant laws, giving a preference of entry to actual settlers; and where an applicant obtained the preference, and was allowed to enter the land on producing false affidavits, by which he imposed on the register and receiver, to the prejudice of another's right.

In the instance before us, each of the parties claimed as occupants for ten consecutive years before the 20th of December, 1803. Gratiot and Jeannette both proved that the latter had occupied as required, but Gratiot imposed on the board by his false deed of assignment for the lot obtained by him from Florence Flore, whose name was untruly signed *Jeannette* Flore; and by reason of this imposition, he obtained confirmation and a patent certificate, which his heirs make the foundation of their suit.

Each party here has a good title, as against the United States, the act of 1807 declaring that a confirmation of the board shall be conclusive against the Government.

As both claims were filed in proper time, and the confirmations were had in due time, the equities are equal, and balance each other, so far as they depend on the confirmations alone; and the question is, can the ordinary courts of justice go behind the right established by the record confirming Gratiot's claim? To do this, proof must be heard impeaching his *prima facie* title, and which proof existed when the claim was filed with the recorder and acted on by the board. In other words, could the State courts go behind Gratiot's confirmation, and, on evidence, compare his equity with that of Jeannette, and adjudge who the true owner was?

In the case of Doe v. Eslava, (9 How., 421,) this court came to the conclusion, (although it is not distinctly expressed,) that in a contention between double concessions, which balanced each other, proof could be heard, and must of necessity

be heard, to determine the better right between the contending parties.

In the cases of Chouteau *v.* Eckhart and Le Bois *v.* Bramell, it was held that the grant made by the act of 1812, of the village commons of St. Charles and St. Louis, and of village lots, to possessors, gave a title in fee; and that a claimant, under a Spanish concession subsequently confirmed, could not go behind the act of Congress, and overthrow the legal title it conferred; and this, for the plain reason that neither Chouteau nor Le Bois had any title, when the act of 1812 was passed, that could be asserted in a court of justice; and as the political power from which alone they could take title had cut them off, to that power they must look for redress of the injury, if any existed.

To conflicts of title of the foregoing description, the principles asserted in the case of Landes *v.* Brant (10 How., 370) apply.

We have no doubt of the correctness of the decision of the Supreme Court of Missouri in this cause, and order its judgment to be affirmed.